[Crim. No. 848. First Appellate District, Division One.—June 7, 1919.]

## THE PEOPLE, Respondent, v. MIKE FUNTAS, Appellant.

[1] CRIMINAL LAW—INFAMOUS CRIME AGAINST NATURE—VERDICT—EVIDENCE.—In this prosecution for the commission of the infamous crime against nature, the evidence was sufficient to justify the verdict of the jury.

[2] ID.—TESTIMONY OF ACCOMPLICE—INSTRUCTIONS—ERROR NOT PREJUDICIAL.—While it was error in such prosecution for the court to refuse to instruct the jury that the testimony of an accomplice is to be viewed with distrust, such error was not prejudicial where the jury was instructed that they could not convict the defendant upon the uncorroborated testimony of an accomplice, and the evidence of the defendant's guilt was quite convincing.

APPEAL from a judgment of the Superior Court of Alameda County. W. M. Conley, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

Frank M. Carr for Appellant.

U. S. Webb, Attorney-General, and John H. Riordan, Deputy Attorney-General, for Respondent.

KERRIGAN, J.—Defendant was convicted of the infamous crime against nature and prosecutes this appeal from the judgment. He relies upon two points for reversal, viz.: (1) That the evidence is insufficient to support the verdict, and (2) that the court erred in failing to instruct the jury that the testimony of an accomplice is to be viewed with distrust.

[1] The evidence in the case is of a sordid character, and it is not necessary to refer to it in any great detail. The testimony of the accomplice in the offense, a boy fourteen years of age, shows when and where the defendant and himself met, the method adopted by the defendant for inducing him to visit defendant's room, all that was done there on the occasion of two of such visits, which comprehended the act upon which the charge was based. Notwith-

standing the criticism of appellant's counsel, this testimony
appears to be full, straightforward, and free from material
discrepancies. Mrs. Bessie Preston, who conducted the lodg-
ing-house where the defendant roomed, testified that several
visits made by defendant to the room of her own son
aroused her suspicion as to defendant's conduct with Frank
Lynch, the accomplice above mentioned. She accordingly
caused to be bored two auger-holes in a wall of defendant's
room. On the evening of November 22, 1918, when the act
charged is alleged to have been committed, she met the
defendant on his way to his room where, as she knew, the
boy was waiting for him, and invited him to join a game of
cards with her and others. On the plea that he was tired
he declined to do so. This refusal heightened her suspicions,
and while the defendant proceeded to his room, she left the
house and secured the co-operation of a policeman. She
stationed him at the door of the defendant's room, and herself
repaired to the auger-holes, and through them witnessed the
act which led to the arrest of and charge against the de-
fendant. The bedroom door was locked, but the officer
testified to hearing the shuffling of feet, and conversation
between the two occupants of the room conducted in a low
tone of voice. The door then being unlocked the officer en-
tered, and found the boy dressed and the defendant undressed.
The officer insisted upon learning what had just occurred
between the pair, and the boy finally confessed to the con-
duct described later by Mrs. Preston when a witness at 'the
trial. The defendant denied the truth of the boy's account,
and claimed that Lynch was present in his room solely for
the purpose of assisting defendant in his study of the Eng-
lish language, but nevertheless attempted to bribe the arrest-
ing officer while being conducted to the jail. This was
testified to by both the officer and the accomplice. The de-
fendant did not take the witness-stand in his own behalf.
We are clearly of opinion that there is no merit in de-
fendant's first point, for the evidence abundantly supports
the verdict of the jury.

[2] The second point, however, is more serious, for the
court should have instructed the jury as requested by the
defendant, to the effect that the testimony of an accomplice
is to be viewed with distrust. The defendant was entitled
to have this instruction given (Code Civ. Proc., sec. 2061;

*People* v. *Bonney*, 98 Cal. 278, [33 Pac. 98]; *People* v. *Sternberg*, 111 Cal. 11, [43 Pac. 201]); so that the question we are confronted with is whether the refusal of the court to so instruct the jury was under the circumstances of the case so prejudicial to the defendant as to require a reversal of the judgment. A consideration of the entire record satisfies us that this question should be answered in the negative. An accomplice ordinarily testifies with a view to protecting himself from prosecution, or to concealing his own guilty conduct, or in the hope of earning a reward or gaining a pardon. Such testimony is tainted. But the jury, being presumably men of ordinary understanding, know this; and the court having to some extent discredited such testimony by instructing the jury, as required by law, that they could not convict the defendant upon the uncorroborated testimony of an accomplice, they would in following such instruction closely scrutinize the testimony referred to, and naturally and necessarily view it with distrust. Moreover, the evidence is quite convincing of the defendant's guilt. There is no claim by the defendant that the witnesses introduced by the prosecution bore him any personal ill-will, or that his prosecution was inspired by hostile motives. The testimony of these witnesses was not contradicted or even discredited, if we except that of the accomplice, which was subject to its inherent infirmity. The evidence thus adduced convincingly established the defendant's guilt; hence the verdict of the jury may not be disturbed.

The judgment is affirmed.

Waste, P. J., and Richards, J., concurred.